Argued January 20; affirmed February 17, 1948

ASHBAUGH *v.* McKINNEY

189 P. (2d) 583

*O. H. Bengtson,* of Medford, argued the cause and filed a brief for appellant.

*G. W. Kellington,* of Medford, argued the cause for respondent. With him on the brief are George M. Roberts and Edward Branchfield, both of Medford.

Before Rossman, Chief Justice, and Lusk, Kelly, Bailey and Brand, Justices.

KELLY, J.

On September 13, 1935, plaintiff's son, Charles Ivan Ashbaugh was born; and, in giving him birth, his mother died. His maternal aunt, the defendant herein, Atha W. McKinney, thereupon took upon herself the custody and care of the newly born infant and, until this proceeding was instituted, continued to have his custody and, as nearly as possible, gave him the attention, supervision and care that he would have received from his mother if she had lived.

The learned trial judge heard the testimony and the arguments of counsel and then entered a decree awarding the custody of the child to the plaintiff.

In her printed brief, as appellant, defendant makes three assignments of error.

The first assignment charges that the trial court erred in overruling defendant's demurrer to plaintiff's petition, application and writ of habeas corpus for the reason that it is not alleged therein that the parties, either plaintiff or defendant, or the minor child or any of them were residents of or domiciled in the state of Oregon, nor were any facts alleged that would give the Oregon court jurisdiction.

In support of this assignment, defendant cites:

*Griffin v. Griffin,* 95 Or. 78, 187 P. 598; *Re Application of Ashley,* 113 Or. 43, 231 P. 153; and *Bryant v. Dukehart,* 106 Or. 359, 210 P. 454. We find no statement in either of these three cases to the effect that, in cases such as this, it is necessary, in order that the Oregon trial court may have jurisdiction of the parties and the subject matter, for the plaintiff to allege in his complaint or petition that the child or children whose custody is sought are domiciled in Oregon, or reside therein.

■ If the statutory provisions, prescribing what the petition for a writ of habeas corpus should contain, were applicable to cases of child custody, the first assignment of error would not be supported by the argument defendant presents, for the reason that there is no statutory provision requiring the petition to allege domicile or residence on the part of either party in Oregon; but because there is a statutory requirement that the place where the party is restrained in whose behalf the writ is sought should be stated in the petition (Sec. 11-404, O. C. L. A., Vol. 2, p. 345), and in the instant case no such statement appears in plaintiff's petition, we feel justified in again stating that the employment of the writ of habeas corpus in cases of child custody "is not pursuant to but independent of statute." See the characteristically able and exhaustive opinion of Mr. Justice BRAND in *Bartlett v. Bartlett,* 175 Or. 215, 152 P. 2d 402, where the authorities are cited and analyzed. There this court, speaking through Mr. Justice BRAND, held that—

> "The employment of the forms of habeas corpus in child custody cases rests upon the inherent power of a court of equity exercising the power of the

state as *parens patriae* for the protection of infant wards of the state.''

■ Moreover, in any view of the phase of the record, the defendant by her representative to the court and her affirmative allegations has taken a position so inconsistent with her contention that the court is without jurisdiction, because plaintiff has not expressly alleged that she, the defendant and the child in suit, were within the territorial jurisdiction of the circuit court of Jackson County, that she ought not now to be allowed to urge such contention.

The record discloses that—

''On the 21st day of August, 1947, at the hour of ten o'clock A. M., that being the time fixed for the hearing of said writ, the defendant appeared before the Circuit Court personally and with O. H. Bengtson, her attorney, and at said time was excused by the court from producing the minor child, Charles Ivan Ashbaugh, into court, upon the ground and for the reason that said child was desperately ill and could not be produced into court.''

In paragraph III of defendant's answer, the following statement is made:

''That said Charles Ivan Ashbaugh * * * is in the care and custody of Atha W. McKinney by virtue of an order made and entered by the county court of Harlan County, Nebraska, * * *.''

In paragraph IV of her answer, defendant states *inter alia*:

* * * ''That the said Atha W. McKinney has, ever since the birth of said child, Charles Ivan Ashbaugh, which was on the 13th day of September, 1935, had the full care, control and custody of said child.'' * * *

There is also an allegation in defendant's further and separate answer that plaintiff entered the armed services of the United States about December, 1940.

Paragraph VIII of defendant's further and separate answer is as follows:

"That about sixty days after the alleged discharge of the petitioner, the petitioner came to the home of the said Atha W. McKinney and stayed in the home of the said Atha W. McKinney, with her mother and brothers and sister at Medford, Oregon."

In paragraph IX of said further and separate answer, it is alleged that the plaintiff tendered the sum of fifty dollars to Atha W. McKinney as a contribution to the support of the child in suit when he left on or about December, 1946.

The return of service of the writ herein by the sheriff of Jackson County, is as follows:

"State of Oregon, ⎫ ss.
 County of Jackson:⎰

I hereby certify that I have served the within Writ of Habeas Corpus within said County this 8th day of August, 1947, on the within named Atha W. McKinney by delivering a true copy thereof prepared and certified to by me as Sheriff together with a copy of the Order and Petition prepared and certified to by George M. Roberts, Attorney for Petitioner to Atha W. McKinney Personally and in Person.

> Howard Gault
> Sheriff of Jackson County, Oregon.
> By L. E. Leigh, Deputy."

For these reasons, we hold that there is no merit in defendant's first assignment of error.

The second assignment of error is based upon the statement that no opportunity was afforded defendant to present the testimony of the child, Charles Ivan Ashbaugh.

The transcript of testimony discloses that when defendant's last witness, who was the defendant herself, had been excused from the witness stand, Mr. Bengtson, her attorney, announced: "We rest, except your honor, I still would like to ask that if the court is not going to interview the boy without either counsel or the parties being present, that we still have the right to take his testimony either by deposition or in court when he recovers. As I understand the court is going to interview the boy with none of the parties there." To this the court replied: "We will discuss that at the end of the case."

At the conclusion of the testimony offered by plaintiff in rebuttal, the last witness called being Mrs. Carol McKinney, and after she had been excused, Mr. Kellington, attorney for plaintiff, announced: "We rest, your honor." Then Mr. Bengtson, attorney for defendant, also announced: "We rest, your honor."

Thereupon the trial judge said: "Regarding the testimony of this boy. The court, of course, won't go and see this boy unless counsel stipulates to that effect. Otherwise, the boy will have to be brought in court and his testimony taken."

The attorney for plaintiff then said: "We don't desire to stipulate without first making some showing to the effect that his testimony in this case isn't material."

The court then indicated that the attorneys might submit their arguments and at the close of the arguments the matter concerning an interview by the court

of the boy or the taking of his testimony could be taken up.

The arguments were then made, after which the court stated his position as to the disposition of the case which indicated that he would give the custody of the boy to the plaintiff.

The court then said: "If you want me to I will go and see the boy."

Mr. Bengtson, attorney for the defendant, replied "By all means, your honor, we would like to have you see the boy."

To this, the court answered: "Perhaps I had better."

■ In the light of this record we think defendant is in no position to urge that the court erred in respect to the boy's testimony. In other words, if it was error at all for the court to take the course he did, it was invited error.

The third assignment of error is to the effect that the trial court considered only the paramount right of the petitioner as a father to the custody of his son and that the trial court did not take into consideration the desire of the child with respect to which party should be awarded his custody. We find nothing in the record that supports the statement that the trial court disregarded the child's desire as stated.

■ This being a proceeding in equity, the trial in this court is *de novo* and the entire record must be considered.

The record of the testimony in this case consists of two hundred pages. It is difficult, if not impossible, to present here a synopsis of it without unduly extending this opinion.

■ We have carefully considered it in its entirety and think that it has not been shown that plaintiff is an unfit person to have the custody of his son.

During the month of October, 1936, the defendant was appointed guardian of the child's person and estate by the county court of Harlan County, Nebraska, where at that time the defendant and the child in suit were living. In April, 1942, the defendant with the child came from Nebraska to Oregon and established her residence in Medford, Oregon, where she and the child now reside.

At all times since the child was born plaintiff has kept in touch with his boy and in so far as his circumstances would permit has contributed of his means toward his son's support. Plaintiff entered the U. S. Navy on December 7, 1940, and served therein until September 23, 1945. According to plaintiff's testimony during that period the amount of money contributed to the support of his son through the system of allotment and by the direction of plaintiff amounted to approximately $2,000.00. Cancelled checks are in this record drawn by plaintiff in favor of defendant, the first of which is dated December 4, 1942, and the last, July 12, 1947. The aggregate amount thus shown to have been contributed by plaintiff is $975.00.

It appears from the uncontradicted testimony that plaintiff is now in a position to provide a home for his son; and that both plaintiff and his present wife desire that the custody of the boy be awarded to plaintiff.

The writer of this opinion cannot refrain, however, from saying that defendant cannot be too highly commended for the service she has rendered to her ward. It is undisputed that at his birth by her efforts only,

his very existence was made possible and that all through the subsequent twelve years of his life in every respect she has been the only· mother he has ever known.

The writer of this opinion ardently hopes that this boy who ere long will be a young man, may realize that at all times in the future as opportunity is afforded, he should constantly manifest in every way within his power his deep appreciation of and his heartfelt gratitude for this service so unselfishly and effectively rendered to him by his foster mother.

The decree of the circuit court is affirmed.